UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY FLORES,

        Plaintiff,

                                      Case No. 2:19-cv-11358

vs                                Hon. Avern Cohn
                                        Mag. David R. Grand

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant.

| | |
|---|---|
| Jacob Bender (P78743) | K. Scott Hamilton (P44095) |
| Cooper & Bender, P.C. | Dickinson Wright PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 4153 Occidental Highway | 500 Woodward Avenue, Suite 400 |
| P.O. Box 805 | Detroit, MI 48226 |
| Adrian, MI 49221 | (313) 223-3500 |
| (517) 263-7884 | |

## DEFENDANT UNUM LIFE'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Defendant Unum Life Insurance Company of America, by and through counsel Dickinson Wright PLLC, hereby moves for entry of judgment in its favor on the administrative record in this ERISA-governed action pursuant to the procedures set out in *Wilkins v. Baptist Healthcare Syst., Inc.*, 150 F.3d 609 (6th Cir. 1989).

In support of this Motion, Unum Life relies upon the argument and authorities in its accompanying Brief, exhibits to the Brief, and the Administrative Record (filed under seal).

DICKINSON WRIGHT PLLC

By:  /s/ K. Scott Hamilton
K. Scott Hamilton (P44095)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500
KHamilton@dickinsonwright.com

Dated:  August 19, 2019

## Certificate of Service

I hereby certify that on August 19, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/K. Scott Hamilton
K. Scott Hamilton (P44095)
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226-3425
313-223-3500
KHamilton@dickinsonwright.com

DETROIT 16344-316 1511629v1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY FLORES,

      Plaintiff,

vs

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

      Defendant.

Case No. 2:19-cv-11358
Hon. Avern Cohn
Mag. David R. Grand

| | |
|---|---|
| Jacob Bender (P78743) | K. Scott Hamilton (P44095) |
| Cooper & Bender, P.C. | Dickinson Wright PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 4153 Occidental Highway | 500 Woodward Avenue, Suite 400 |
| P.O. Box 805 | Detroit, MI 48226 |
| Adrian, MI 49221 | (313) 223-3500 |
| (517) 263-7884 | |

**BRIEF IN SUPPORT OF DEFENDANT UNUM LIFE'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

# **TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES..................................................................II

I.    STATEMENT OF FACTS ...........................................................1

    A.    Introduction................................................................1

    B.    Relevant Facts.............................................................1

        1.    The Plan...........................................................1

        2.    Plaintiff's Claim for Benefits ............................2

II.   ARGUMENT ..............................................................................16

    A.    Procedures for Reviewing ERISA Claims.......................16

    B.    The Standard of Review is the Arbitrary and Capricious Standard ...................................................................17

    C.    Unum's Decision Was Not Arbitrary and Capricious......................20

III.  CONCLUSION ...........................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140 (6th Cir. 1991) .................................................................................... 20

*Breland v. Liberty Life Assur. Co. of Boston*, 2016 WL 1132948 (E.D. Mich., March 12, 2015) ................................................................................. 19

*Evans v. UnumProvident Corp.*, 434 F.3d 866 (6th Cir. 2006) ............................... 20

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ................................. 17

*McClain v. Eaton Corp Dis. Plan*, 740 F.3d 1059 (6th Cir. 2014) .................... 17, 20

*Mellian v. Hartford Life and Acc. Ins. Co.*, 2016 WL 552723 (E.D. Mich., Feb. 12, 2016) ...................................................................................... 18, 19

*Rice v. Sun Life & Health Insur. Co.*, 2014 WL 24046 at *5 (W.D. Mich., Jan. 2, 2014) ................................................................................................ 19

*Schwahn v. Guardian Life Ins. Co. of America*, 626 F.3d 299 (6th Cir. 2010) ....... 20

*Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536 (6th Cir. 2003) ..................... 20

*Tikkanen v. Liberty Life Assur. Co.*, 31 F. Supp.3d 913 (E.D. Mich. 2014) ........... 19

*Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998) .................. 16

*Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir. 2000) ..................................... 20

# I.   STATEMENT OF FACTS

## A.   Introduction

Plaintiff Amy Flores has sued Defendant Unum Life Insurance Company of America for disability benefits under a plan governed by the Employee Retirement Income Security Act ("ERISA").   Unum paid Plaintiff monthly benefits because her back pain disabled her from performing the duties of her own occupation as a nurse's assistant, which frequently required lifting patients and equipment.   Under the Plan, Plaintiff was entitled to benefits beyond 24 months only if she was unable to engage in *any* gainful occupation, as opposed to her own *specific* occupation as a nurse.   After considering all of her medical records, results of an independent medical examination, the opinions of board-certified consulting physicians, and vocational reviews, Unum determined Plaintiff was able to engage in other gainful work, and therefore ended benefits after she had been paid beyond 24 months.

Unum's decision was based on substantial medical evidence and the Plan's terms.   Because Unum's decision was not arbitrary and capricious, the Court should enter judgment in Unum's favor affirming Unum's administrative decision.

## B.   Relevant Facts

### 1.   The Plan

Unum issued Plaintiff's employer, ProMedica Health Systems, Inc., group policy number 510638007 ("the Plan") on January 1, 2006.  (Exhibit 1).  Plaintiff is a participant in the Plan.  (R. 1, Complaint, ¶4).

The Plan defines "disability" for long term disability ("LTD") benefits as follows:

> You are disabled when Unum determines that:
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(Exhibit 1 at 32[1]) (bolded words are defined terms in the Plan). The Plan further states "[w]e will stop sending you payments and your claim will end . . . after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to . . . ." (Exhibit 1 at 37).

"Gainful occupation" under the Plan means "an occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds . . . 80% of your indexed monthly earnings, if you are working; or 60% of your indexed monthly earnings, if you are not working." (Exhibit 1 at 48).

## 2.     Plaintiff's Claim for Benefits

Plaintiff was employed by ProMedica as a critical care nursing assistant. The physical demands of her occupation were "lifting 50 lbs. maximum, with

---

[1] The page number references are to the final digits of the Bates-stamp numbers in the lower right of each page of Exhibit 1.

frequent lifting/carrying up to 25 lbs.," "[f]requent prolonged standing/walking," "[l]ift[ing], position[ing], push[ing] or transfer[ing] patients," "[l]ift[ing] supplies and equipment," "[c]onsiderable reaching, stooping, bending, kneeling and crouching," and the need to "move frequently."  (AR[2] at 272) (Exhibit 2). Plaintiff's weekly wage was $601.92.  (AR at 76) (Ex. 2).

Plaintiff last worked in her occupation on December 17, 2015, when she left because of back pain.  She applied for short-term disability ("STD") benefits, which Unum paid beginning December 20, 2015 (AR at 84) (Ex. 2), based on "lumbar radiculopathy" and "limited [range of motion] pain" that "radiates to [the left] leg."  (AR at 51-52) (Ex. 2).  Mary Beth Darling, a certified nurse practitioner, stated Plaintiff was restricted from "lifting, standing or sitting for long periods of time."  (AR at 51) (Ex. 2).  Unum paid Plaintiff STD benefits through the maximum benefit period, ending March 26, 2016.  (AR at 351) (Ex. 2).

After the STD benefit period ended, Unum Life notified Plaintiff of her ability to request long-term disability ("LTD") benefits, which Unum approved beginning March 19, 2016 at $1,529.78 per month.  (AR at 376-79) (Exhibit 3).[3]

_____

[2] "AR" refers to the Administrative Record which has been filed under seal.  All documents from the STD portion of the Administrative Record referred to in this Brief are attached as Exhibit 2, filed under seal.  Page references are to the last digits of each Bates-stamped number.
[3] All documents from the LTD portion of the Administrative Record referred to in this Brief are attached as Exhibit 3, filed under seal.

Plaintiff had disc surgery on May 26, 2016 by Dr. Rakesh Patel with restrictions of "no driving or bend twist or pull and no lift over 5 pounds for six weeks." (AR at 421) (Ex. 3). On July 28, 2016, after examining Plaintiff, Dr. Patel's office visit note stated Plaintiff "should be able to resume [occupational] duties on . . . 9/8/16." (AR at 438) (Ex. 3).

On August 25, 2016 Unum called Plaintiff "to see if she was on target for [return to work] on 9/8/16." (AR at 440) (Ex. 3). Plaintiff "advised that she is concerned and afraid about having to lift 300 pound patients," but reported "that she is about 50-75% better right now." *Id.*

On September 7, 2016, Plaintiff informed Unum she would not be returning to work on September 8, and Unum requested updated medical records from her physical therapist, Dr. Patel, and certified nurse practitioner Mary Beth Darling. (AR at 448-50) (Ex. 3).

On September 7, 2016, Unum received a note from nurse Darling simply saying she "agree[s]" that "patient not to return to work until she is evaluated by the neurosurgeon [*i.e.*, Dr. Patel] on 9/27/16." (AR at 452) (Ex. 3). Unum also received on September 7, 2016 Plaintiff's physical therapy records from Total Rehab. (AR at 454-509) (Ex. 3).

Dr. Patel provided his records (AR at 527-50) (Ex. 3), and an October 4, 2016 note saying Plaintiff "should be able to resume [occupational] duties

on . . . 10/27/2016" after a follow-up appointment on October 26, 2016.  (AR at 563) (Ex. 3).  Dr. Patel thereafter provided more records (AR at 610-11), including a November 2, 2016 letter stating:

> I had the pleasure of seeing Amy J. Flores on 11/2/2016.
> * * *
> Amy should be able to resume duties as follows:
>     One week 8 hours a day for 4 days, and then resume to
>     normal schedule of 3 days 12 hours
>     Restrictions:  None.

(AR at 613) (Ex. 3).

On November 2, 2016, Plaintiff told Unum in a phone call "that she saw her [attending physician, Dr. Patel] today and that he reviewed her MRI with her." She told Unum that Dr. Patel "advised that he cleared her to [return to work] with no [restrictions or limitations] from the visit today."  (AR at 614) (Ex. 3).  The Unum representative told her "that since she was cleared to [return to work] as of the office visit" on November 2, 2016, "her benefits will be [paid] through today and [Unum] will close her claim."  *Id.*  In a November 4, 2016 letter to Plaintiff, Unum confirmed that benefits would end on November 13.  (AR at 621-25) (Ex. 3).

Plaintiff called Unum the morning of November 4, 2016 to "advise[ ] that she coughed last night [*i.e*, 11/3/16] and she felt something pull in her back so she went to the ER room."  (AR at 637) (Ex. 3).  Plaintiff said the ER "provided a note keeping her out of work till 11/10/16," and Unum told her that it had already

agreed to pay "her through 11/13/16 with the release to [return to work] 11/14/16."
*Id.*

On November 4, 2016 Unum received the medical records of Dr. Jacob
Martinez, Plaintiff's family physician, who wrote that "[t]his patient has a surgeon
[Dr. Patel] who will release her if they feel appropriate."  (AR at 639-57).  Dr.
Martinez identified no restrictions on his November 2, 2016 disability status
update report to Unum, and in response to "the duration of" any "restrictions and
limitations," answered "Back Surgeon's [*i.e.*, Dr. Patel's] discretion."  (AR at 645)
(Ex. 3).

On November 9, 2016, Dr. Patel sent Unum a form note simply saying
Plaintiff "May Not Return to Work," and her expected return date would be
"[a]fter her next scheduled" visit on November 30 following a November 17 MRI.
(AR at 711-12) (Ex. 3).  Dr. Patel also submitted updated records to Unum.  (AR at
715-21).

Dr. Patel wrote a letter on November 30, 2016 saying:

> Amy J. Flores was seen in our clinic on 11/30/2016
> Any should be able to resume duties on . . . 12/1/16.  She has no
> restrictions aside from sitting breaks as needed for lumbar pain.

(AR at 740) (Ex. 3).  Plaintiff spoke with Unum by phone after that appointment,
saying "she was cleared to return to work tomorrow."  (AR at 741) (Ex. 3).  Dr.

Patel provided the office notes of his November 30, 2016 examination, which said in part:

> She denies any new numbness/tingling/weakness. She reports that she has predominately back pain which has improved with her home exercise program over the last couple of weeks. The radiation of pain into her right buttocks is now gone. She does not have any symptoms in her bilateral lower extremities.
>
> * * *
>
> 5/5 strength to bilateral hip flexor, knee extensor, tibialis anterior, plantar flexor, and extensor/flexor hallus longus . . . . No pain with internal/external rotation of the bilat[eral] hips.
>
> * * *
>
> We are pleased overall with her progress and lack of radicular symptoms. For her back pain we encouraged her to participate in physical therapy for core strengthening.
>
> * * *
>
> We also provided her with a return to work note today.

(AR at 749-50). Ex. 3).

On December 14, 2016, Plaintiff's entire medical file was reviewed by medical consultant Dr. Peter Kouros, D.O., who wrote a report (AR at 763-65) (Ex. 3) that concluded:

> The sum of the clinical and functional information in the file is most consistent with the absence of [restrictions and limitations] that would have precluded the insured from performing her occupational demands after a limited recovery period of 6-12 weeks after uncomplicated L5/51 discectomy performed on 5/26/16. The insured reported an exacerbation after coughing on 11/3/16, but there were no associated findings that correlated with impairment due to this event. The office notes most recently documented the absence of neurologic deficits.

(AR at 764) (Ex. 3).

The next day, December 15, 2016, Dr. Patel responded to Dr. Kouros'
earlier inquiry to him whether in his opinion Plaintiff was "able to perform [her]
occupational demands [of exerting 20-50 pounds, frequent standing, walking,
reaching, handling, fingering and occasional stooping] on a full-time basis." Dr.
Patel answered "From a spine perspective patient is structurally OK," but he
"would recommend she have a function compatibility test done." (AR at 769-70)
(Ex. 3.).

Following Dr. Patel's recommendation, and despite the fact that Dr. Patel
had cleared his patient to return to her normal occupation, Unum arranged a
Functional Capacity Examination ("FCE") on December 28, 2016. (AR at 992-96
and 999-1000) (Ex. 3). The FCE report was issued January 27, 2017 (AR at 1011-
1033) (Ex. 3).

Dr. Kouros reviewed the FCE report and concluded that "based on the FCE
results that indicated adequate effort and the absence of information to the
contrary, it is clinically reasonable that the insured is limited to performing at a
light level of work as defined by the DO[L] on a full-time basis." (AR at 1036-
37).

In light of the FCE and Dr. Kouros' opinion, on January 30, 2017 Unum told
Plaintiff it was re-opening her LTD claim and continued paying benefits. (AR. At
1049-51) (Ex. 3).

On February 20, 2018, Plaintiff had disc fusion surgery. (AR at 1458-63) (Ex. 3). Dr. Patel noted as of March 7, 2018 Plaintiff "is not currently taking narcotic pain medication," has "weaned off all narcotic medications," and "is walking." (AR at 1458) (Ex. 3). Her "right SI joint pain has improved by 50%," and she had no new "numbness, tingling, pain, or weakness of the lower extremities." *Id.* As of April 4, 2018 Plaintiff stated "that she is doing well," and that her pain has improved in comparison to preoperatively." (AR at 1459) (Ex. 3). On April 18, 2018, Dr. Patel reported he was "pleased with the patient's progress at this time." (AR at 1461) (Ex. 3).

On June 28, 2018, a Unum representative told Plaintiff "we do not have any current [medical] providers giving any [restrictions or limitations]," and asked if she had any other providers, to which she said "no." (AR at 1610) (Ex. 3).

On July 16, 2018 a vocational consultant, Jennifer Lyon, conducted a vocational review which concluded that at least three gainful occupations (hotel housekeeping attendant, cafeteria attendant, and retail checker) "are consistent with [Plaintiff's] prior work history, skills, education/training, demonstrated General Educational Development levels, and restrictions and limitations" she may have. (AR at 1631-33).

While Unum continued to pay Plaintiff LTD benefits because she could not work in her own occupation as a nursing assistant, on March 21, 2017 she was

denied Social Security Disability benefits.  (AR at 1066-77).  Plaintiff claimed that

she was "disabled because of radiculopathy, lumbar region and low back pain," to

which the Social Security Administration responded:

> We have determined that your condition is not severe enough to keep
> you from working.  We considered the medical and other information
> and work experience in determining how your condition affects your
> ability to work.  We do not have sufficient vocational information to
> determine whether you can perform any of your past relevant work.
> However, based on the evidence in this file, we have determined you
> can adjust to other work.

(AR at 1066) (Ex. 3).  Thus, although the Social Security Administration could not

determine whether she could perform the duties of her own occupation, it did

determine that she could perform *some* occupation and was therefore not disabled.

On June 19, 2017, Unum informed Plaintiff that beginning March 19, 2018

Plaintiff would only be deemed "disabled" if she cannot perform the duties of *any*

gainful occupation.  (AR at 1089-92) (Ex. 3).

Unum had Plaintiff undergo an independent medical examination ("IME")

on August 23, 2018 by Dr. Stanley Lee, M.D., a board certified orthopedic spine

surgeon.  (AR at 2329) (Ex. 3).  Dr. Lee both examined Plaintiff, and reviewed the

medical records of her treating physicians.  Dr. Lee concluded:

> [Plaintiff] previously underwent micro discectomy and right SI
> fusion . . . .  She did not have any objective complications after the
> surgeries, and her physical examination today is objectively normal.  I
> did not find evidence of ongoing pathology or impairment to suggest
> that she is in need of any further diagnostic tests, treatment or activity
> restrictions as it relates to the surgeries.  Based on the elapsed time

> from the most recent surgery, coupled with her objectively negative
> physical examination today, I believe that she may return to
> unrestricted activities. At this point, I do not find evidence of any
> restrictions and/or limitations.

(AR at 2361) (Ex. 3).

Dr. Lee further reported based on his IME that Plaintiff "has the capacity to meet" the occupational demands of "[o]ccasional exertion up to 20 pounds and/or frequent exertion up to 10 pounds, frequent standing, walking, and reaching," and that she has "full time sustained functional capacity to perform . . . [o]ccasional stooping, kneeling and crouching." (AR at 2361) (Ex. 3).

On September 5, 2018, Unum contacted nurse Darling's office, explained that Plaintiff underwent an IME, and asked if that health care provider "was opining [restrictions and limitations] or . . . [w]ould [the provider] defer to IME?" (AR at 2372) (Ex. 3). Unum was told that the provider "is deferring to IME results regarding comment on [Plaintiff's] capacity." *Id.* The office of another of Plaintiff's physicians, Dr. Moosa, told Unum the same on September 6, 2018. (AR at 2373) (Ex. 3).

By letter of September 6, 2018 Unum ended Plaintiff's LTD benefits, explaining its determination that she is "able to perform the duties of other gainful occupations," is therefore "not disabled under the policy and benefits are not payable as of September 07, 2018." (AR at 2376-82) (Ex. 3). Unum informed Plaintiff's employer it has "approved [Plaintiff's] benefits through September 07,

2018 based on information that supports she is able to perform the material and substantial duties of any gainful occupation." (AR at 2394 ) (Ex. 3).[4]

On September 7, 2018, Unum received a September 5, 2018 Notice of Decision denying SSDI benefits. (AR at 2396-2414) (Ex. 3). The Administrative Law Judge found "[a]fter careful consideration of the entire record" that Plaintiff "has the residual functional capacity to perform light work." (AR at 2403). The SSA Administrative Law Judge explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. ... Specifically, the undersigned notes that the claimant was cleared to return to work by her attending physician in October 2016, and has since reported a 50-75% improvement in her lower back symptoms following corrective surgery. Therefore, based on the foregoing, the undersigned finds that the ... above residual functional capacity assessment [that she can perform light work] is supported by the objective medical evidence, the opinion evidence, and the statements of the claimant.

(AR at 2407) (Ex. 3).

Plaintiff administratively appealed Unum's termination of benefits by letter of February 28, 2019. (AR at 2463-66) (Ex. 3). Plaintiff included in that appeal

---

[4] Plaintiff's LTD benefits actually should have ended March 19, 2018 when the Plan's definition of "disabled" changed. Unum nonetheless paid Plaintiff LTD benefits for 5 more months.

(1) medical records from Dr. Luke Kim and (2) a vocational analysis from Elizabeth Pasikowski.

Plaintiff's entire file was reviewed on appeal, including the new medical and vocational information, by a physician and vocational consultant different from those who previously reviewed the file.

On March 26, 2019, Dr. John Coughlin, M.D. wrote a report (AR at 2692-97) (Ex. 3) which concluded that restrictions and limitations "are supported based on lack of capacity for predictable and sustainable frequent standing, walking," but "are not supported for performance of a primarily seated occupation." (AR at 2694) (Ex. 3). Dr. Coughlin considered Dr. Kim's opinion in light of all of Plaintiff's medical records in the file and concluded that "[t]he weight of medical evidence does not support Dr. Kim's statement of 11/12/18 that Ms. Flores 'is totally and permanently disabled at this time'." (AR at 2694) (Ex. 3). When asked if the medical "evidence support[s] [that Plaintiff] would be unable to perform at the sedentary level," Dr. Coughlin responded:

> No.   Medical evidence does not support lack of capacity for . . . [e]xertion up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects; frequent reaching; occasional stooping, kneeling and crouching (in the lower 50% of occasional range); or standing/walking required of a primarily seated occupation. Medical evidence supports the necessity of availability of brief periods to adjust the body for comfort sake (including standing) while performing a primarily seated position.

(AR at 2695) (Ex. 3).

Dr. Coughlin reached that conclusion by thoroughly considering all of Plaintiff's medical records, including medical "[d]ocumentation from 5/26/18 until 7/31/18 [which] indicates progressive improvement in low back pain complaints." (AR at 2695) (Ex. 3).

With respect to Dr. Kim's medical records, Dr. Coughlin noted that Dr. Kim's October 3, 2018 office visit note said Plaintiff "[a]ppears in no acute distress; walked without ataxia or antalgic; could walk on heels and toes without difficulty; neurologic exams of upper and lower extremities unremarkable." (AR at 2696) (Ex. 3). In short, although Dr. Kim said "I gave her a statement that she is totally and permanently disabled at this time," Dr. Coughlin found no medical support for that statement. (AR at 2696) (Ex 3).

In addition to Dr. Coughlin's review of Plaintiff's medical evidence on appeal, Unum had Senior Vocational Rehabilitation Consultant G. Shannon O'Kelley opine whether Plaintiff would "be fitted to the performance of other gainful [occupations] based on her training, education, and experience," assuming that Plaintiff could (1) exert up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects; (2) frequently reach; (3) occasionally stoop, kneel or crouch; and (4) stand or walk as required of a primarily seated occupation. (AR at 2698) (Ex. 3). The

vocational consultant was also asked to assume Plaintiff could not frequently stand and/or walk, and would need to be able to make body adjustments when seated for comfort. *Id.*

On March 27, 2019, the vocational consultant's report, which considered the reviews by Elizabeth Paczkowski and Jennifer Lyon, concluded:

> The insured would be fitted to the performance of other gainful occupation(s) with the restrictions and limitations presented. Vocational options would include, but are not limited to, the following:
> > Telemarketer . . .
> > Call Center Representative . . .
> > Receptionist . . .
> > Telephone Operator . . .

(AR at 2699) (Ex. 3). Those occupations are available in the Ann Arbor, Michigan area have median first year hourly rates of $13.93, $12.33, $14.14, and $14.07 respectively. *Id.*

The March 27, 2019 vocational report further explained:

> The aforementioned occupations would not require exertion beyond 10 pounds. These occupations would not require stooping, kneeling, or crouching. Standing and walking would be required briefly and work is performed mostly seated. These occupations are performed in work setting where one would have the ability to alter, shift or change positions for brief periods without interfering with the functions of the occupations. These occupations would exist within the insured's labor market and provide an hourly income that would meet or exceed $9.13 per hour where the current minimum wage of Michigan is $9.25 as of 1/1/18.
> The insured has experience in dealing with people, providing external and internal customer service, maintaining/sharing information, use of general office tools, providing clerical support, answering phones, and

> operating a computer to enter/retrieve data which are sufficient to perform the aforementioned occupations. These occupations do not require more education then demonstrated by the insured. The insured is fitted by training, education and experience to the performance of the other gainful occupations with the restrictions and limitations presented.

(AR at 2699-2700) (Ex. 3).

On April 12, 2019 Unum informed Plaintiff's counsel it was upholding the termination of LTD benefits for the reason that Plaintiff was able to engage in a gainful occupation after having received at least 24 months of LTD benefits, and was therefore not entitled to LTD benefits after the 24-month period. (AR at 2705-14) (Ex. 3).

Plaintiff filed the present action on May 8, 2019. (R. 1, Complaint).

## II.        ARGUMENT

### A.    Procedures for Reviewing ERISA Claims

*Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), held that ERISA claims under §1132(a)(1)(B) are not subject to traditional summary judgment standards. Instead, a district court must determine whether the administrative decision was correct under the appropriate standard of review based on only the evidence in the administrative record and the plan's terms. *Id.* at 618.

Challenges to benefit denials "under §1132(a)(1)(B) are reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan'." *McClain*

*v. Eaton Corp Dis. Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If the plan vests such "discretion to an administrator or fiduciary," the court must "review the denial of benefits only to determine if it was 'arbitrary and capricious'."  *McClain*, 740 F.3d at 1064.

### B.    The Standard of Review is the Arbitrary and Capricious Standard

The Plan expressly grants Unum discretion, making the standard of review arbitrary and capricious.  The Plan provides:

> When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

(Exhibit 1 at 18).  *See also id.* at 57-58 ("The Plan . . . delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan.").

Although Michigan's "anti-discretionary clause" regulation, Mich. Admin. Code R. 500.2202, generally makes discretionary clauses unenforceable, that regulation does not apply in this case because the Plan was not issued or delivered in Michigan.  Mich. Admin. Code R. 500.2202 provides in relevant part:

> (c)    On or after [July 1, 2007] a discretionary clause *issued or delivered to any person in this state* in a policy contract, rider, endorsement, certificate or similar contract document is void and of no effect.  This does not apply to contract documents in

use before that date, but does apply to any such document revised in any respect on or after that date. (emphasis added).

Unum issued the Plan to the Policyholder,[5] Plaintiff's employer Promedica Health Systems, Inc., on January 1, 2006. (Exhibit 1 at 2). The Plan was issued to Promedica at 2142 North Cove Blvd., Toledo, Ohio. (Exhibit 1 at 52).

The Plan prominently states "GOVERNING JURISDICTION: Ohio." (Exhibit 1 at 2). Moreover, in addition to being *issued* to Promedica in Toledo, Ohio, the Plan expressly states that it was *delivered in* the State of Ohio:

> The policy is delivered in and is governed by the laws of the governing jurisdiction [i.e., Ohio] and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

(Exhibit 1 at 2).

This Court has repeatedly held that group policies issued or delivered to policyholders outside of Michigan are not subject to Mich. Admin. Code R. 500.2202, and in that circumstance the "anti-discretionary clause" regulation does not void a Plan's express grant of discretion.

*Mellian v. Hartford Life and Acc. Ins. Co.*, 2016 WL 552723 (E.D. Mich., Feb. 12, 2016), held that "this state insurance rule is not applicable" because "[b]y its terms, Rule 500.2202(c) applies only to a 'policy, contract, rider, indorsement, certificate, or similar [insurance] contract document" that is "***issued or delivered***

---

[5] Under the Plan, "POLICYHOLDER means the Employer to whom the policy is issued," which was ProMedica Health Systems, Inc.

*to*" a person in Michigan. *Id.* at \*7 (emphasis in original). In *Mellian*, the policy "expressly state[d] that it was issued by Defendant to Plaintiff's employer Atkore International," located in Harvey, Illinois. *Id.* at \*7. Under that "record, it cannot be said that the Policy issued in Michigan, nor is there any evidence that it was delivered to any individual in Michigan." *Id.* As a result, "the Michigan insurance rule . . . does not override the Policy's express grant of discretionary authority to Defendant." *Id.*

In *Breland v. Liberty Life Assur. Co. of Boston*, 2016 WL 1132948 (E.D. Mich., March 12, 2015), the Liberty Life "policy was issued and delivered in North Carolina." *Id.* at \*2. Consequently, this Court held that "Michigan's anti-discretionary clause regulation [did] not void the policy's discretionary clause," and that "[t]he appropriate standard of review is 'arbitrary and capricious'." *Id.* at \*4. *See also Tikkanen v. Liberty Life Assur. Co.*, 31 F. Supp.3d 913, 920-922 (E.D. Mich. 2014) (Rule 500.2202(c) inapplicable to void discretionary clause where policy was issued in Georgia); *Rice v. Sun Life & Health Insur. Co.*, 2014 WL 24046 at \*5 (W.D. Mich., Jan. 2, 2014) (Rule 500.2202(c) inapplicable because policy "state[d] that it was issued in Rhode Island and [w]as governed by the laws of that state").

### C.    Unum's Decision Was Not Arbitrary and Capricious

Under the arbitrary and capricious standard, the Court must give extreme deference to Unum's administrative decision.  The Sixth Circuit held in *Schwahn v. Guardian Life Ins. Co. of America*, 626 F.3d 299 (6th Cir. 2010):

> The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003).  The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was "rational."  *Id.*  Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).  Yet the deferential standard of review does not mean courts should "rubber stamp[ ]" a plan administrator's decision – a court must review the quantity and quality of the medical evidence on each side.  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).  A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence."  *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

*Id.* at 308.

The Sixth Circuit has cautioned that "though the [arbitrary and capricious] standard is not without some teeth, it is not all teeth," *McClain, supra*, 704 F.3d at 1064, and that an "'extremely deferential review,' to be true to its purpose, must

actually honor an 'extreme' level of 'deference' to the administrative decision." *Id.*

Unum's decision was rational and amply supported by substantial evidence. It therefore should be affirmed.[6]

Without repeating the facts in Section I(B)(2), Unum's decision that Plaintiff could perform a gainful occupation after she was paid LTD benefits for 24 months was supported by the opinions of her own physician (Dr. Patel), the Social Security Administration's findings, the medical opinions of consulting physicians Drs. Kouros and Coughlin, the IME by Dr. Lee, and the vocational analyses of Shannon O'Kelley and Jennifer Lyon.

Moreover, Unum fully and fairly considered the opinions and findings of Plaintiff's treating physicians, all of her medical records, and did not overlook or discount any relevant medical findings.

Unum furthermore did nothing to indicate bias stemming from the fact that it both determined entitlement to LTD benefits and paid those benefits. To the contrary, after Plaintiff's treating physician (Dr. Patel) cleared Plaintiff to return to work in her own occupation, instead of terminating her benefits, Unum had a functional capacity evaluation of Plaintiff done which Unum's reviewing physician

---

[6] Unum's decision would also have to be affirmed if reviewed *de novo* given the weight of medical and vocational evidence establishing Plaintiff's ability to perform the duties of a gainful occupation other than as a nurse assistant.

determined rendered her still disabled from her own occupation, and therefore Unum reinstated her LTD benefits.  Unum also had an IME performed, which further belies any claim of bias.  Additionally, Unum continued to pay Plaintiff LTD benefits well beyond the 24-month "own occupation" period, even though it determined Plaintiff was able to work in other gainful employment, and was therefore not disabled, when the 24-month period expired.  Lastly, that the Social Security Administration found that Plaintiff could perform substantial duties in occupations other than nursing evidences that Unum's decision was not influenced by bias.

### III.      CONCLUSION

Unum's decision to end Plaintiff's LTD benefits was well-supported by the evidence in the Administrative Record, was not arbitrary and capricious, and judgment should be entered in favor of Unum affirming its decision.

DICKINSON WRIGHT PLLC

By: /s/ K. Scott Hamilton
K. Scott Hamilton (P44095)
Attorneys for Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500

Dated:  August 19, 2019

22

**Certificate of Service**

I hereby certify that on August 19, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/K. Scott Hamilton
K. Scott Hamilton (P44095)
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226-3425
313-223-3500
KHamilton@dickinsonwright.com

DETROIT 16344-316 1510104v1