UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY FLORES,

    Plaintiff,

v.

UNUM LIFE INSURANCE CO.
OF AMERICA,

    Defendant.
-------------------------------------------/

Case No. 2:19-cv-11358

Hon. Avern Cohn
United States District Judge

Hon. David R. Grand
United States Magistrate Judge

**PLAINTIFF'S CORRECTED MOTION FOR SUMMARY JUDGMENT
AND REPLY TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through her undersigned attorneys, hereby moves this Court to grant summary judgment in her favor and deny Defendant's motion for summary judgment pursuant to the procedures set forth in *Wilkins v. Baptist Healthcare Syst., Inc.*, 150 F.3d 609 (6th Cir. 1989).

In support of this motion and in response to Defendant's motion, Plaintiff relies upon the arguments and authorities in its accompanying brief, exhibits, and the administrative record already filed under seal.

Respectfully submitted,

s/ Jacob C. Bender
Attorney for plaintiff
Cooper & Bender, P.C.
P.O Box 805
Adrian, MI 49221
Phone: (517) 263-7884
Frontdesk@cooperandbenderpc.com
P-78743

Dated: October 10, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2019, the foregoing document was electronically filed by the undersigned's authorized representative, using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Jacob Bender
Attorney for Plaintiff
P.O. Box 805
Adrian, Michigan 49221
Phone: (517) 263-7884
Frontdesk@cooperandbenderpc.com
P-78743

## INDEX OF AUTHORITIES CITED

ITEM:                                                                                                          PAGE:

Cases

*Baker v. United Mine Workers of Am. Health & Ret. Funds*,
929 F.2d 1140, 1144 (6th Cir. 1991).......................................................................  13

*Firestone v. Bruch*,
489 U.S. 101, 115 (1989).........................................................................................   8

*Glenn v. MetLife*,
461 F.3d 660, 666 (6th Cir. 2006)............................................................................  13

*Helfman v. GE Grp. Life Assurance Co.*,
573 F.3d 383, 393 (6th Cir. 2009)............................................................................  12

*Shaw v. AT & T Umbrella Ben. Plan No. 1*,
795 F.3d 538, 550 (6th Cir. 2015)............................................................................  12

*Wilkins v. Baptist Healthcare Syst., Inc.*,
150 F.3d 609 (6th Cir. 1989)....................................................................................   1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY FLORES,

    Plaintiff,

v.

UNUM LIFE INSURANCE CO.
OF AMERICA,

    Defendant.

-------------------------------------------/

Case No. 2:19-cv-11358

Hon. Avern Cohn
United States District Judge

Hon. David R. Grand
United States Magistrate Judge

**BRIEF IN SUPPORT OF PLAINTIFF AMY FLORES' MOTION FOR SUMMARY JUDGEMENT**

**ON THE ADMINISTRATIVE RECORD AND REPLY TO DEFENDANT'S**

**MOTION FOR SUMMARY JUDGEMENT**

### I. INTRODUCTION

Plaintiff Amy Flores was a participant in Defendant's long term disability plan by virtue of her employment with Promedica Healthcare ("ProMedica"). Plaintiff worked for ProMedica as a critical care nursing assistant. On December 20, 2015, Plaintiff stopped working and eventually became entitled to payment of monthly disability benefits under the Plan. Defendant paid these benefits to Plaintiff until September 6, 2018.

Plaintiff formally appealed the denial and discontinuation of disability benefits in accordance with the Plan's claims review and appeal procedure. On April 12, 2019, Unum denied Plaintiff's appeal and upheld its earlier decision. Unum only offered one level of appeal, and stated its administrative review process had concluded. Plaintiff timely filed suit with this Court to appeal Defendant's denial.

## II. Statement of Facts

On November 2, 2016, an MRI of Plaintiff's lumbar spine showed a residual disc fragment or scarring along the right S1 nerve root as well as slight contour distortion of the right lateral thecal sac from scar tissue, as well as a protrusion at the L4-L5 level. (Ex. 1, pg 2496).[1]

On January 24, 2018, Plaintiff was treated at U of M's orthopedic spine clinic for chronic SI joint pain. (Ex. 1, pg 1357). It was noted that she experienced 75% improvement in her pain with an injection into her right SI joint, but that radiofrequency ablation of the SI joint cannot be performed since there was concern over its effect on Plaintiff's blood sugars. *Id.* Instead, it was recommended that Plaintiff undergo a right SI joint fusion. (Ex. 1, pg 1358). Dr. Rakesh Patel, an orthopedic surgeon, noted that the degenerative disc disease in her lumbar spine "may be contributing to her pain as well." (Ex. 1, pg 1359).

Dr. Patel noted that if this operation didn't resolve her pain, he had no other surgical options for her (and noted that a two level fusion for degenerative disc disease had low success rates for improving pain). *Id.*

On February 5, 2018, a pelvic CT scan showed a broad-based disc bulge at L4-L5 resulting in moderate spinal canal narrowing, as well as a central disc protrusion at L5-S1 which effaced the ventral thecal sac. (Ex. 1, pg 1364).

On February 20, 2018, Dr. Patel operated on Plaintiff, fusing her right SI joint. He recommended that she maintain a 5 pound weight restriction and avoid bending or twisting for 6 weeks after the operation. (Ex. 1, pg 1459). She had previously had a L5-S1 discectomy in May 2016. (Ex. 1, pg 2067).

---

[1] Exhibit 1 consists of pages excerpted from the record. The page numbers are the last 4 digits of the bates numbered administrative record previously filed under seal.

On April 4, 2018, Dr. Patel's physician assistant noted that while Plaintiff's pain was better after the operation, she still had increased pain with prolonged sitting. (Ex. 1, pg 1459).

On April 11, 2018, Plaintiff began physical therapy, and it was noted that she had difficulty and pain with sitting and with going from sitting to standing. (Tr. at 1577).

On May 9, 2018, Defendant wrote to Dr. Patel, inquiring whether Plaintiff was capable of performing light work. (Ex. 1, pg 1520). Dr. Patel declined to answer, instead writing "patient should ease into activities and use her body as a guide." *Id.*

On June 6, 2018, Plaintiff informed Defendant that she was "still having a lot of pain when [she does] things around the house." (Ex. 1, pg 1554).

On June 6, 2018, Dr. Finney, an orthopedic surgeon, noted that Plaintiff continued to report difficulty with prolonged sitting and standing. (Ex. 1, pg 2320).

On June 7, 2018, Mary Beth Darling, NP, Plaintiff's primary care provider, noted that Plaintiff was taking Norco (a narcotic pain medication) as prescribed for her chronic pain. (Ex. 1, pg 2521). Plaintiff's diagnoses were listed as spondyloarthropathy, herniated lumbar intervertebral disc, stenosis of intervertebral foramina, and lumbar spinal stenosis. (Ex. 1, pg 2527).

On July 15, 2018, Dr. Patel released Plaintiff from his care, stating that she had no further restrictions and that she could return to his clinic as needed. (Ex. 1, pg 2323).

On August 24, 2018, Dr. Stanley Lee evaluated Plaintiff at the request of Defendant. (Ex. 1, pg 2358). Dr. Lee stated he could find nothing wrong with Plaintiff, and did not feel she needed any restrictions. (Ex. 1, pg 2361).

On September 6, 2018, Defendant sent Plaintiff a letter indicating her benefits were cut off as of September 7, 2018 since the definition of disability had changed to the inability "to

perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience." (Ex. 1, pg 2377, 2379). The stated basis for the denial was that Dr. Lee didn't feel she needed restrictions, and that Mary Beth Darling, NP, deferred to Dr. Lee. (Ex. 1, pg 2378).The veracity of this statement about Ms. Darling is discussed further in the arguments section.

On October 3, 2018, Dr. Luke Kim, a physiatrist, evaluated Plaintiff. (Ex. 1, pg 2474).He noted that she had limited range of motion in her lumbosacral spine, and still had tenderness over her SI joints, gluteus maximus muscles, and quadratus lumborum muscles, bilaterally. *Id.* He noted that she was moving much better after treatment. *Id.*

On November 12, 2018, Dr. Kim evaluated Plaintiff and concluded that "she is not a whole lot better" despite doing the exercises he recommended. (Ex. 1, pg 2473).He noted that she still had limited range of motion in her lumbosacral spine, and still had tenderness over her SI joints, gluteus maximus muscles, and quadratus lumborum muscles, bilaterally. *Id.* Dr. Kim wrote that Plaintiff was "totally and permanently disabled." (Ex. 1, pg 2472). He referred her to Michigan Pain Specialists in hopes they could offer her more relief. (Ex. 1, pg 2473).

On November 19, 2018, Dr. Kim completed a medical source statement in which he opined that Plaintiff could walk up to 2 blocks, sit up to 15 minutes, and stand up to 20 minutes. (Ex. 1, pg 2469). Dr. Kim also opined that due to her symptoms, Plaintiff would be off task 25% or more of the workday, and would miss more than 4 days of work per month on average. (Ex. 1, pg 2471).

On December 13, 2018, Plaintiff went to Michigan Pain Specialists, where Joan Westbrook, PA-C, noted that she was experiencing lower back pain with bilateral leg tingling. (Ex. 1, pg 2484). It was noted that she was laying down often, had poor ability to function, and

was taking 40 Norco tablets per month. *Id.* It was recommended that she receive an epidural steroid injection at L5-S1 and consider having a spinal cord stimulator implanted. (Ex. 1, pg 2485).

On February 4, 2019, Plaintiff receive a caudal epidural steroid injection. (Ex. 1, pg 2487).

On February 22, 2019, Elizabeth Pasikowski, a vocational rehabilitation counselor, reviewed Dr. Kim's restrictions and concluded that they "would not allow for return to any type of full time gainful employment." (Ex. 1, pg 2477).

On March 26, 2019, Unum had its in-house endocrinologist (a diabetes, hormones, and metabolism expert), Dr. John Coughlin, review Plaintiff's claim regarding her back pain. (Ex. 1, pg 2694, 2697). He concluded that Plaintiff couldn't engage in frequent standing or walking, and that she could stoop, kneel and crouch less than 1/3 of the day. (Ex. 1, pg 2694).

On April 19, 2019, Defendant denied Plaintiff's appeal. (Ex. 1, pg 2706).

### III.  STANDARD OF REVIEW

The standard of review in this case is *de novo*. In *Firestone v. Bruch*, the United States Supreme Court held that the standard of review in ERISA cases is *de novo*, unless the plan administrator put discretionary authority language in the policy. 489 U.S. 101, 115 (1989). If the plan has discretionary authority language in the policy, the standard of review would normally be arbitrary and capricious. *Id.*

However, in a letter dated May 17, 2007, Unum informed Michigan's Commissioner of Insurance it would no longer be enforcing discretionary authority language in the policies listed in the letter. (Exhibit 2). The policy at issue in this case, C.FP-1, is listed as one where discretionary authority will no longer be enforced. (Exhibit 3, pg 173).

While Defendant makes the argument that the governing jurisdiction listed in the plan is Ohio, this argument fails. This is a case involving a Michigan resident employed at a facility located within Michigan, where Defendant itself sent a letter to the State of Michigan stating it wouldn't enforce discretionary language in plans. Nowhere in that letter does it have caveats regarding governing jurisdiction. Instead, the letter simply states that the discretionary language will no longer be applied a list of plans (including the one at issue in this case).

Regarding Defendant's argument that the policy went into effect before Michigan issued the relevant rule, Defendant's letter to the Commissioner of Insurance makes it clear that this change applies to plans already in effect.[2] Further, it was amended on March 9, 2015 (and thus "revised" within the meaning of the relevant rule). (Exhibit 3, pg 172).

As the discretionary language in the policy will not be applied, the proper standard of review in this case under Firestone is *de novo*.

IV.     **Arguments**

A.     **The Record Supports Plaintiff's Claim for Disability Benefits.**

In this case, the Plan's definition of disability is the inability "to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience." The record, with objective evidence and extensive efforts to obtain treatment, clearly shows that Plaintiff meets this definition of disability.

A November 2016 lumbar MRI showed a residual disc fragment or scarring along the right S1 nerve root as well as slight contour distortion of the right lateral thecal sac from scar tissue, as well as a protrusion at the L4-L5 level. (Ex. 1, pg 2496). A February 2018 pelvic CT

---

[2] "Pursuant to Rule 500.2202, I certify that Unum Life Insurance Company of North America…before March 1, 2007, issued the following forms which contained a discretionary clause as defined in the referenced rule. As of March 1st, we will no longer be applying the discretionary language in our policies." (Emphasis added) (Exhibit 2).

scan showed a broad-based disc bulge at L4-L5 resulting in moderate spinal canal narrowing, as well as a central disc protrusion at L5-S1 which effaced the ventral thecal sac. (Ex. 1, pg 1364).

Plaintiff has undergone two surgeries to treat her chronic musculoskeletal pain, without lasting relief. (Ex. 1, Pg 1459, 2067). While she had a temporary improvement in pain after the surgery, she continued to need narcotic pain medication to try to manage her symptoms. (Ex. 1, pg 2648).[3] She routinely complained of pain with prolonged sitting. (Ex. 1, pg 1459, 1577, 2320). She attempted physical therapy and doing home exercises without meaningful relief. (Ex. 1, 1577, 2473). She went to a pain clinic and received a caudal epidural steroid injection, and was recommended to consider having a spinal cord stimulator implanted. (Ex. 1, pg 2485, 2487).

Dr. Luke Kim, a physical medicine and rehabilitation doctor, treated her twice and concluded that he was unable to effectively manage her pain. (Ex. 1, pg 2473). Having examined her, he concluded that she could walk up to 2 blocks, sit up to 15 minutes, and stand up to 20 minutes. (Ex. 1, pg 2469). Dr. Kim also opined that due to her symptoms, Plaintiff would be off task 25% or more of the workday, and would miss more than 4 days of work per month on average. (Ex. 1, pg 2471).

Upon reviewing these restrictions, Elizabeth Pasikowski, a certified vocational rehabilitation counselor (and one who has worked as a vocational expert for the Social Security Administration for 27 years) opined that Dr. Kim's restrictions "would not allow for return to any type of full time gainful employment." (Ex. 1, pg 2477, 2479).

Clearly, Plaintiff has provided ample proof that she meets the standard of disability under the Plan, and this Court should reverse Defendant's decision accordingly.

---

[3] Norco is listed in these records by its generic name, Hydrocodone/Acetaminophen.

B.     **Defendant's Actions were Arbitrary and Capricious.**

Assuming *arguendo* that this Court holds that the standard of review is arbitrary and capricious, Plaintiff would still prevail.

Defendant's original denial letter was based on an independent medical exam by Dr. Stanley Lee, an orthopedic surgeon, and a claim that Plaintiff's primary care provider, Mary Beth Darling, deferred to Dr. Lee's opinion. (Ex. 1, 2378). Plaintiff appealed this, noting that Dr. Lee's opinion was inconsistent with the medical evidence and not credible in its conclusions. Plaintiff also noted that it was simply not possible that Ms. Darling deferred to Dr. Lee's opinion, as she had already stopped working at the clinic when Defendant allegedly called and spoke with her on September 5, 2019. (Ex. 1, pg 2372, 2482).

In response, Defendant stopped relying on the opinion of Dr. Lee (admitting he didn't perform tests that would have found abnormalities in Plaintiff),[4] and instead deferred to the opinion of Dr. John Coughlin. (Ex. 1, pg 2695, 2709). Dr. Coughlin is an employee of Defendant who conducted a file review (never personally examining the Plaintiff). (Ex. 1, pg 2697). Most importantly, <u>Dr. Coughlin is an endocrinologist</u>, and is not properly qualified to assess an individual with back pain. *Id.*

Defendant also conceded that Ms. Darling left the practice before they allegedly spoke to her there (Ex. 1, pg 2711, 2372). However, they act as though this doesn't matter, because Ms. Darling's replacement, Laura Manders, didn't provide Plaintiff with restrictions. (Ex 1, Pg 2711). This argument is a red herring. Ms. Manders was silent on the topic of restrictions, neither lifting them nor imposing them. To argue she felt one way or the other about Plaintiff's ability to work is pure speculation, and speculation isn't a proper basis for denying a claimant benefits. Further, she had even seen Plaintiff yet when Defendant called.

---

[4] Ex. 1, pg 2710.

Defendant's brief does not address this discrepancy, nor does it acknowledge Defendant conceded Ms. Darling left the practice before Defendant attempted to contact her. (ECF No. 10, Page*ID.* 4027; Ex. 1, pg 2711).

More notably, Defendant's brief states "the office of another of Plaintiff's physicians, Dr. Moosa, told Unum the same on September 6, 2018." (ECF No. 10, Page*ID.* 4027; citing to Ex. 1, pg 2373). However, this is incorrect. Dr. Moosa's office actually told Defendant that "[the] office does not comment on work function or [restrictions and limitations]." (Ex. 1, pg 2373. This is hardly deferring to Dr. Lee's exam.

In sum, Defendant's position is that Plaintiff isn't disabled because an endocrinologist (who is trained to treat metabolic and hormone disorders) looked at medical records regarding her back pain and said she could work. To bolster its position, they speculate that Plaintiff's primary care provider didn't feel she needed any restrictions (despite her having not even seen her yet and nothing in the treatment records suggesting she felt that way).

Even under the deferential arbitrary and capricious standard of review, Defendant's rationale is insufficient.

While there is nothing inherently wrong with relying on a file review, "the failure to conduct a physical examination, where the Plan document gave the plan administrator the right to do so, 'raise[s] questions about the thoroughness and accuracy of the benefits determination.'" *Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) (quoting *Helfman v. GE Grp. Life Assurance Co.,* 573 F.3d 383, 393 (6th Cir. 2009)). In this case, Defendant realized it was necessary to conduct a physical examination of Plaintiff (by an independent doctor of the appropriate specialty), but then conceded that the doctor who conducted that

examination failed to perform the necessary tests during it, and based its final denial on a different doctor's opinion.

The problem with Defendant's actions is that the doctor whose opinion they based their final denial on was an endocrinologist who worked for them and who never physically examined the Plaintiff. If it was necessary to conduct a physical exam with the appropriate doctor who was independent the first time, why was it suddenly unnecessary the second time? Why was it suddenly appropriate to let a doctor who manages diabetes and never examined Plaintiff second guess the opinion of Dr. Kim, who treats specializes in treating back pain and examined Plaintiff twice?

Under the arbitrary and capricious standard of review, an administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." (*Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). In this case, Defendant's decision is not supported by substantial evidence and is not the result of a deliberate or principled reasoning process. It should be reversed accordingly.

### V. Conclusion

Plaintiff submits that this case should be reviewed *de novo* and that the record as a whole supports Plaintiff's claim for disability benefits. Even if the case is reviewed under the arbitrary and capricious standard, the record as a whole supports that Defendant's decision to terminate LTD benefits was arbitrary and capricious. Plaintiff's LTD benefits should be restored and continued and Plaintiff should receive fees and costs and any other relief she is entitled to under the facts and applicable law.

Respectfully submitted,

/s/ Jacob Bender<br>
Attorney for Plaintiff<br>
P.O. Box 805<br>
Adrian, Michigan 49221<br>
Phone: (517) 263-7884<br>
Frontdesk@cooperandbenderpc.com<br>
P-78743

Dated: October 10, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2019, the foregoing document was electronically filed by the undersigned's authorized representative, using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Jacob Bender
Attorney for Plaintiff
P.O. Box 805
Adrian, Michigan 49221
Phone: (517) 263-7884
Frontdesk@cooperandbenderpc.com
P-78743