UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY FLORES,                                        Case No. 19-11358

      Plaintiff                                Stephanie Dawkins Davis
v.                                                 United States District Judge

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

      Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF No. 10)

## I.  PROCEDURAL HISTORY

Plaintiff, Amy Flores, filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), seeking the reinstatement of her long-term disability benefits through her employer-sponsored benefit plan.  (ECF No. 1).  Defendant, Unum Life Insurance Company of America, filed the administrative record and its motion for judgment on the record on August 19, 2019.  (ECF Nos. 9-11).  Flores filed her response on October 10, 2019.  (ECF No. 16).  Unum filed a reply on October 18, 2019.  (ECF No. 19).  The court held a hearing on March 5, 2020, pursuant to notice.  (ECF No. 21).  For the reasons set forth below, the court **GRANTS** Unum's motion for judgment on the record.

## II.    FACTUAL BACKGROUND

Unum issued group policy number 510638007 (the Plan) on January 1,

2006, to Flores' employer.  (ECF No. 10-2).  Flores is a plan participant. (ECF No.

1, ¶ 4).  The Plan defines "disability" for long term disability (LTD) benefits as

follows:

> You are disabled when Unum determines that: you are
> **limited** from performing the **material and substantial**
> **duties** of your **regular occupation** due to your **sickness**
> or **injury**; and you have a 20% or more loss in your
> **indexed monthly earnings** due to the same sickness or
> injury.
>
> After 24 months of payments, you are disabled when
> Unum determines that due to the same sickness or injury,
> you are unable to perform the duties of any gainful
> occupation for which you are reasonably fitted by
> education, training or experience.

(ECF No. 10-2, p. 32).[1]  The Plan further states "[w]e will stop sending you

payments and your claim will end ... after 24 months of payments, when you are

able to work in any gainful occupation on a part-time basis but you choose not to

...."  *Id*. at 37  "Gainful occupation" under the Plan is defined as "an occupation

that is or can be expected to provide you with an income within 12 months of your

return to work, that exceeds ... 80% of your indexed monthly earnings, if you are

---

[1]  Terms in bold print are defined terms in the policy/plan document.

working; or 60% of your indexed monthly earnings, if you are not working." *Id*. at 48.

Flores worked for ProMedica as a critical care nursing assistant. The physical demands of her occupation were "lifting 50 lbs. maximum, with frequent lifting/carrying up to 25 lbs.," "[f]requent prolonged standing/walking," "[l]ift[ing], position[ing], push[ing] or transfer[ing] patients," "[l]ift[ing] supplies and equipment," "[c]onsiderable reaching, stooping, bending, kneeling and crouching," and the need to "move frequently." (ECF No. 9-1, PageID.298, AR at 272). Flores last worked for ProMedica on December 17, 2015, when she left because of back pain.

Flores applied for short-term disability (STD) benefits, which Unum paid beginning December 20, 2015 (ECF No. 9-1, PageID.110-111, AR at 84-85), based on "lumbar radiculopathy" and "limited [range of motion] pain" that "radiates to [the left] leg." (ECF No. 9-1, PageID.77-78, AR at 51-52). Mary Beth Darling, a certified nurse practitioner (CNP) and Flores' primary care provider, opined that she was restricted from "lifting, standing or sitting for long periods of time." (ECF No. 9-1, PageID.77, AR at 51). Unum paid Flores STD benefits through the maximum benefit period, ending March 26, 2016. (ECF No. 9-2, PageID.377-378, AR at 351-52).

After the STD benefit period ended, Unum Life notified Flores that she could request LTD benefits, which Unum approved beginning March 19, 2016 at $1,529.78 per month.  (ECF No. 9-2, PageID.402-405, AR at 376-79).  Flores had disc surgery on May 26, 2016, performed by Dr. Rakesh Patel with restrictions of "no driving or bend twist or pull and no lift over 5 pounds for six weeks."  (ECF No. 9-2, PageID.1006, AR at 421).  On July 28, 2016, after examining Flores, Dr. Patel stated that she "should be able to resume [occupational] duties on ... 9/8/16." (ECF No. 9-2, PageID.1023, AR at 438).  On August 25, 2016 Unum called Flores "to see if she was on target for [return to work] on 9/8/16."  (ECF No. 9-2, PageID.1025, AR at 440).  Flores "advised that she is concerned and afraid about having to lift 300 pound patients," but reported "that she is about 50-75% better right now."  *Id*.

On September 7, 2016, Flores told Unum she would not be returning to work on September 8, and Unum requested updated medical records from her physical therapist, Dr. Patel, and CNP Darling.  (ECF No. 9-2, PageID.1033-1035, AR at 448-50).  On September 7, 2016, Unum received a note from Darling saying she agrees that Flores could not return to work "until she is evaluated by the neurosurgeon [i.e., Dr. Patel] on 9/27/16."  (ECF No. 9-2, PageID.1037, AR at 452).  Unum also received Flores' physical therapy records from Total Rehab. (ECF No. 9-2, PageID.1039-1094, AR at 454-509).  Dr. Patel provided his records

4

(ECF No. 9-2, PageID.1112-1135, AR at 527-50), and an October 4, 2016 note

saying that Flores "should be able to resume [ occupational] duties on ...

10/27/2016" after a follow-up appointment on October 26, 2016.  (ECF No. 9-2,

PageID.1148, AR at 563).  Dr. Patel thereafter provided more records (ECF No. 9-

3, PageID.1195-96, AR at 610-11), including a November 2, 2016 letter stating:

> I had the pleasure of seeing Amy J. Flores on 11/2/2016.
> * * *
> Amy should be able to resume duties as follows: One
> week 8 hours a day for 4 days, and then resume to normal
> schedule of 3 days 12 hours
>
> Restrictions: None.

(ECF No. 9-3, PageID.1198, AR at 613).

On November 2, 2016, an MRI of Flores' lumbar spine showed a residual

disc fragment or scarring along the right S1 nerve root as well as slight contour

distortion of the right lateral thecal sac from scar tissue and a protrusion at the L4-

L5 level.  (ECF No. 9-5, AR 2496).  On that same date, Flores told Unum in a

phone call "that she saw her [attending physician, Dr. Patel] today and that he

reviewed her MRI with her."  She told Unum that Dr. Patel "advised that he

cleared her to [return to work] with no [restrictions or limitations] from the visit

today." (ECF No. 9-3, PageID.3755, AR at 614).  The Unum representative told

her "that since she was cleared to [return to work] as of the office visit" on

November 2, 2016, "her benefits will be [paid] through today and [Unum] will

close her claim." *Id*.  In a November 4, 2016 letter to Flores, Unum confirmed that benefits would end on November 13.  (ECF No. 9-3, PageID.1206-1210, AR at 621-25).

Flores called Unum the morning of November 4, 2016 to "advise[] that she coughed last night [i.e, 11/3/16] and she felt something pull in her back so she went to the ER room."  (ECF No. 9-3, PageID.1222, AR at 637).  Flores said the ER "provided a note keeping her out of work till 11/10/16," and Unum told her that it had already agreed to pay "her through 11/13/16 with the release to [return to work] 11/14/16."  *Id*.

On November 4, 2016, Unum received the medical records of Dr. Jacob Martinez, Flores' family physician, who wrote that "[t]his patient has a surgeon [Dr. Patel] who will release her if they feel appropriate."  (ECF No. 9-3, PageID.1224-1242, AR at 639-57).  Dr. Martinez identified no restrictions on his November 2, 2016 disability status update report to Unum, and in response to "the duration of" any "restrictions and limitations," answered "Back Surgeon's [i.e., Dr. Patel's] discretion."  (ECF No. 9-3, PageID.1230, AR at 645).

On November 9, 2016, Dr. Patel sent Unum a note saying that Flores "May Not Return to Work," and her expected return date would be "[a]fter her next scheduled" visit on November 30 following a November 17 MRI.  (ECF No. 9-3, PageID.1296-1297, AR at 711-12).  Flores was not able to have another MRI

because of insurance reasons.  (ECF 9-3, PageID.1317, AR at 732).  Dr. Patel

wrote a letter on November 30, 2016 saying:

> Amy J. Flores was seen in our clinic on 11/30/2016.
>
> Amy should be able to resume duties on: 12/1/16.  She
> has no restrictions aside from sitting breaks as needed for
> lumbar pain.

(ECF No. 9-3, PageID.1325, AR at 740).  Flores spoke with Unum by phone after

that appointment, saying "she was cleared to return to work tomorrow."  (ECF No.

9-3, PageID.1326, AR at 741).  Dr. Patel provided the office notes of his

November 30, 2016 examination, which said in part:

> She denies any new numbness/tingling/weakness. She
> reports that she has predominately back pain which has
> improved with her home exercise program over the last
> couple of weeks. The radiation of pain into her right
> buttocks is now gone. She does not have any symptoms
> in her bilateral lower extremities.
> * * *
> 5/5 strength to bilateral hip flexor, knee extensor, tibialis
> anterior, plantar flexor, and extensor/flexor hallus longus
> . . . . No pain with internal/external rotation of the
> bilat[eral] hips.
> * * *
> We are pleased overall with her progress and lack of
> radicular symptoms. For her back pain we encouraged
> her to participate in physical therapy for core
> strengthening.
> * * *
> We also provided her with a return to work note today.

(ECF 9-3, PageID.1334-1335, AR at 749-50).

On December 14, 2016, Unum had Flores' entire medical file reviewed by

medical consultant Dr. Peter Kouros, D.O., who wrote a report (ECF No. 9-3,

PageID.1348-1350, AR at 763-65) that concluded:

> The sum of the clinical and functional information in the
> file is most consistent with the absence of [restrictions
> and limitations] that would have precluded the insured
> from performing her occupational demands after a
> limited recovery period of 6-12 weeks after
> uncomplicated L5/S1 discectomy performed on 5/26/16.
> The insured reported an exacerbation after coughing on
> 11/3/16, but there were no associated findings that
> correlated with impairment due to this event. The office
> notes most recently documented the absence of
> neurologic deficits.

(ECF No. 9-3, PageID.1349, AR at 764).

The next day, Dr. Patel responded to Dr. Kouros' earlier inquiry to him

whether in his opinion Flores was "able to perform [her] occupational demands [of

exerting 20-50 pounds, frequent standing, walking, reaching, handling, fingering

and occasional stooping] on a full-time basis."  Dr. Patel answered: "From a spine

perspective patient is structurally OK," but he "would recommend she have a

function compatibility test done."  (ECF No. 9-3, PageID.1354-1355, AR at 769-

70).  Following Dr. Patel's recommendation, Unum arranged for Flores to undergo

a Functional Capacity Examination (FCE) on December 28, 2016.  (ECF No. 9-3,

PageID.1577-1581; ECF No. 9-3, PageID.1584-1585, AR at 992-96 and 999-

1000).  The FCE report was issued January 27, 2017.  (ECF No. 9-3, PageID.1596-

1618, AR at 1011-1033).  Dr. Kouros reviewed the FCE report and concluded that

"based on the FCE results that indicated adequate effort and the absence of

information to the contrary, it is clinically reasonable that the insured is limited to

performing at a light level of work as defined by the DOT on a full-time basis."

(ECF No. 9-3, PageID.1621-1622, AR at 1036-37).  In light of the FCE and Dr.

Kouros' opinion, on January 30, 2017 Unum told Flores it was re-opening her LTD

claim and continued paying benefits, given that she could not perform the duties of

her own occupation.  (ECF No. 9-3, PageID.1634-1636, AR at 1049-51).  On

March 21, 2017, Flores' application for Social Security Disability benefits was

denied.  (ECF No. 9-3, PageID.1651-1662, AR at 1066-77).  Flores claimed that

she was "disabled because of radiculopathy, lumbar region and low back pain," but

the Social Security Administration (SSA) denied her claims for the following

reasons:

> We have determined that your condition is not severe
> enough to keep you from working. We considered the
> medical and other information and work experience in
> determining how your condition affects your ability to
> work. We do not have sufficient vocational information
> to determine whether you can perform any of your past
> relevant work.  However, based on the evidence in this
> file, we have determined you can adjust to other work.

(ECF No. 9-3, PageID.1651, AR at 1066).  On June 19, 2017, Unum informed

Flores that beginning March 19, 2018, she would only be deemed "disabled" if she

cannot perform the duties of any gainful occupation.  (ECF No. 9-3, PageID.1674-

1677, AR at 1089-92).

On January 24, 2018, Flores was treated at U of M's orthopedic spine clinic for chronic SI joint pain.  (ECF No. 9-4, PageID.1942, AR at 1357).  It was noted that she experienced 75% improvement in her pain with an injection into her right SI joint, but that radiofrequency ablation of the SI joint cannot be performed since there was concern over its effect on her blood sugar.  *Id*.  Instead, it was recommended that Flores undergo a right SI joint fusion.  (ECF No. 9-4, PageID.1943, AR at 1358).  Dr. Rakesh Patel, an orthopedic surgeon, noted that the degenerative disc disease in her lumbar spine "may be contributing to her pain as well."  (ECF No. 9-4, PageID.1944, AR at 1359).  Dr.  Patel noted that if this operation did not resolve her pain, he had no other surgical options for her (and noted that a two-level fusion for degenerative disc disease had low success rates for improving pain).  *Id*.  On February 5, 2018, a pelvic CT scan showed a broad-based disc bulge at L4-L5 resulting in moderate spinal canal narrowing, as well as a central disc protrusion at L5-S1 which effaced the ventral thecal sac.  (ECF No. 9-4, PageID.1949, AR at 1364).  On February 20, 2018, Dr. Patel operated on Flores, fusing her right SI joint.  He recommended that she maintain a 5-pound weight restriction and avoid bending or twisting for 6 weeks after the operation. (ECF No. 9-4, PageID.2044, AR at 1459).

Dr. Patel noted as of March 7, 2018, Flores "is not currently taking narcotic pain medication," has "weaned off all narcotic medications," and "is walking."

(ECF No. 9-4, PageID.2043, AR at 1458).  Her "right SI joint pain has improved by 50%," and she had no new "numbness, tingling, pain, or weakness of the lower extremities."  *Id*.  As of April 4, 2018, Flores stated, "that she is doing well," and that her pain has improved in comparison to preoperatively."  (ECF No. 9-4, PageID.2044, AR at 1459).  However, Dr. Patel's physician assistant also noted that while Flores' pain was better after the operation, she still had increased pain with prolonged sitting.  *Id*.  On April 11, 2018, Flores began physical therapy, and it was noted that she had difficulty and pain with sitting and with going from sitting to standing.  (ECF No. 9-4, Page ID.2862, AR at 1577).  On April 18, 2018, Dr. Patel reported he was "pleased with the patient's progress at this time."  (ECF No. 9-4, PageID.2046, AR at 1461).

On May 9, 2018, Unum wrote to Dr. Patel, inquiring whether Flores was capable of performing light work.  (ECF No. 9-4, PageID.2805, AR at 1520).  Dr. Patel declined to answer, instead writing "patient should ease into activities and use her body as a guide."  *Id*.  On June 6, 2018, Flores told Unum that she was "still having a lot of pain when [she does] things around the house."  (ECF No. 9-4, PageID.2839, AR at 1554).  On that same date, Dr. Finney, an orthopedic surgeon, noted that Flores continued to report difficulty with prolonged sitting and standing.  (ECF No. 9-5, PageID.3603, AR at 2320).  On June 7, 2018, CNP Darling noted that Flores was taking Norco (a narcotic pain medication) as prescribed for her

chronic pain.  (ECF No. 9-5, PageID.3780, AR at 2521).  Flores' diagnoses were listed as spondyloarthropathy, herniated lumbar intervertebral disc, stenosis of intervertebral foramina, and lumbar spinal stenosis.  (ECF No. 9-5, PageID.3786, AR at 2527).  On July 15, 2018, Dr. Patel released Flores from his care, stating that she had no further restrictions and that she could return to his clinic as needed. (ECF No. 9-5, PageID.3606, AR at 2323).

On June 28, 2018, a Unum representative told Flores that "we do not have any current [medical] providers giving any [restrictions or limitations]," and asked if she had any other providers, to which she said "no."  (ECF No. 9-4, PageID.2895, AR at 1610).  On July 16, 2018 a vocational consultant, Jennifer Lyon, conducted a vocational review which concluded that at least three gainful occupations (hotel housekeeping attendant, cafeteria attendant, and retail checker) "are consistent with [Flores'] prior work history, skills, education/training, demonstrated General Educational Development levels, and restrictions and limitations" she may have.  (ECF No. 9-4, Page ID.2916-2918, AR at 1631-33).

During this time, Unum continued to pay Flores LTD benefits because she could not work in her own occupation as a nursing assistant.  Unum had Flores undergo an independent medical examination (IME) on August 23, 2018 by Dr. Stanley Lee, M.D., a board-certified orthopedic spine surgeon.  (ECF No. 9-5,

PageID.3612, AR at 2329).  Dr. Lee examined Flores and reviewed the medical

records of her treating physicians.  Dr. Lee concluded:

> [Plaintiff] previously underwent micro discectomy and
> right SI fusion . . . . She did not have any objective
> complications after the surgeries, and her physical
> examination today is objectively normal. I did not find
> evidence of ongoing pathology or impairment to suggest
> that she is in need of any further diagnostic tests,
> treatment or activity restrictions as it relates to the
> surgeries. Based on the elapsed time from the most recent
> surgery, coupled with her objectively negative
> physical examination today, I believe that she may return
> to unrestricted activities. At this point, I do not find
> evidence of any restrictions and/or limitations.

(ECF No. 9-5, PageID.3644, AR at 2361).  Dr. Lee further reported based on his

IME that Flores "has the capacity to Meet" the occupational demands of

"[o]ccasional exertion up to 20 pounds and/or frequent exertion up to 10 pounds,

frequent standing, walking, and reaching," and that she has "full time sustained

functional capacity to perform ... [o]ccasional stooping, kneeling and crouching."

*Id*.

On September 5, 2018, Unum contacted CNP Darling's office, explained

that Flores underwent an IME, and asked if that health care provider "was opining

[restrictions and limitations] or ... [w]ould [the provider] defer to IME?"  (ECF No.

9-5, PageID.3655, AR at 2372).  Unum was told that the provider "is deferring to

IME results regarding comment on [Flores'] capacity."  *Id*.  The office of another

of Flores' physicians, Dr. Moosa, told Unum the same on September 6, 2018.

(ECF No. 9-5, PageID.3655, AR at 2373).

By letter of September 6, 2018 Unum ended Flores' LTD benefits,

explaining its determination that she is "able to perform the duties of other gainful

occupations," is therefore "not disabled under the policy and benefits are not

payable as of September 07, 2018."  (ECF No. 9-5, PageID.3659-3665, AR at

2376-82).  Unum informed her employer it has "approved Amy Flores's benefits

through September 07, 2018 based on information that supports she is able to

perform the material and substantial duties of any gainful occupation."  (ECF No.

9-5, PageID.3677, AR at 2394).

On September 7, 2018, Unum received a September 5, 2018 Notice of

Decision denying SSDI benefits.  (ECF No. 9-5, PageID.3796-3814, AR at 2396-

2414).  The Administrative Law Judge found "[a]fter careful consideration of the

entire record" that Flores "has the residual functional capacity to perform light

work."  (ECF No. 9-5, PageID.3803, AR at 2403).  The SSA Administrative Law

Judge explained:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected
> to cause some of the alleged symptoms; however, the
> claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are
> not entirely consistent with the medical evidence and
> other evidence in the record for the reasons explained in

> this decision .... Specifically, the undersigned notes that
> the claimant was cleared to return to work by her
> attending physician in October 2016, and has since
> reported a 50-75% improvement in her lower back
> symptoms following corrective surgery.  Therefore,
> based on the foregoing, the undersigned finds that the ...
> above residual functional capacity assessment [that she
> can perform light work] is supported by the objective
> medical evidence, the opinion evidence, and the
> statements of the claimant.

(ECF No. 9-5, PageID.3807, AR at 2407).

Flores administratively appealed Unum's termination of benefits on

February 28, 2019.  (ECF No. 9-5, PageID.3815-3818, AR at 2463-66).  Flores

submitted along with her appeal, (1) medical records from Dr. Luke Kim and (2) a

vocational analysis from Elizabeth Pasikowski.  On October 3, 2018, Dr. Kim, a

physiatrist, evaluated Flores.  (ECF No. 9-5, PageID.3733, AR at 2474).  He noted

that she had limited range of motion in her lumbosacral spine, and still had

tenderness over her SI joints, gluteus maximus muscles, and quadratus lumborum

muscles, bilaterally.  *Id*.  He noted that she was moving much better after muscle

energy treatment.  *Id*.  On November 12, 2018, Dr. Kim evaluated Flores and

concluded that "she is not a whole lot better" despite doing the exercises he

recommended.  (ECF No. 9-5, PageID.3732, AR at 2473).  He noted that she still

had limited range of motion in her lumbosacral spine, and still had tenderness over

her SI joints, gluteus maximus muscles, and quadratus lumborum muscles,

bilaterally.  *Id*.  Dr. Kim wrote that Flores was "totally and permanently disabled."

(ECF No. 9-5, PageID.3731, AR at 2472).  He referred her to Michigan Pain Specialists in hopes they could offer her more relief.  (ECF No. 9-5, PageID.3732, AR at 2473).  On November 19, 2018, Dr. Kim completed a medical source statement in which he opined that Flores could walk up to 2 blocks, sit up to 15 minutes, and stand up to 20 minutes.  (ECF No. 9-5, PageID.3728, AR at 2469). Dr. Kim also opined that due to her symptoms, Flores would be off task 25% or more of the workday, and would miss more than 4 days of work per month on average.  (ECF No. 9-5, PageID.3728, AR at 2471).

On December 13, 2018, Flores went to Michigan Pain Specialists, where Joan Westbrook, PA-C, noted that she was experiencing lower back pain with bilateral leg tingling.  (ECF No. 9-5, PageID.3743, AR at 2484).  It was noted that she was laying down often, experiencing poor function ability, and taking 40 Norco tablets per month.  *Id*.  She received a recommendation to undergo an epidural steroid injection at L5-S1 and to consider having a spinal cord stimulator implanted.  (ECF No. 9-5, PageID.3744, AR at 2485).  On February 4, 2019, Flores receive a caudal epidural steroid injection.  (ECF No. 9-5, PageID.3746, AR at 2487).  On February 22, 2019, Elizabeth Pasikowski, a vocational rehabilitation counselor, reviewed Dr. Kim's restrictions and concluded that they "would not allow for return to any type of full time gainful employment."  (ECF No. 9-5, PageID.3736, AR at 2477).

On March 26, 2019, Dr. John Coughlin, M.D. wrote a report (ECF No. 9-5, PageID.3975-3980, AR at 2692-97) in which he concluded that restrictions and limitations "are supported based on lack of capacity for predictable and sustainable frequent standing, walking," but "are not supported for performance of a primarily seated occupation."  (ECF No. 9-5, PageID.3977, AR at 2694).  Dr. Coughlin concluded that "[t]he weight of medical evidence does not support Dr. Kim's statement of 11/12/18 that Ms. Flores 'is totally and permanently disabled at this time.'"  *Id*.  When asked if the medical "evidence support[s] [that Flores] would be unable to perform at the sedentary level," Dr. Coughlin responded:

> No. Medical evidence does not support lack of capacity for ... [e]xertion up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects; frequent reaching; occasional stooping, kneeling and crouching (in the lower 50% of occasional range); or standing/walking required of a primarily seated occupation. Medical evidence supports the necessity of availability of brief periods to adjust the body for comfort sake (including standing) while performing a primarily seated position.

(ECF No. 9-5, PageID.3978, AR at 2695).  Although Dr. Kim said that "she is totally and permanently disabled at this time," Dr. Coughlin found no medical support for that statement, pointing to Dr. Kim's October 3, 2018 office visit note said Flores "[a]ppears in no acute distress; walked without ataxia or antalgic; could

walk on heels and toes without difficulty; neurologic exams of upper and lower

extremities unremarkable."  (ECF No. 9-5, PageID.3979, AR at 2696).

Unum also had Senior Vocational Rehabilitation Consultant G. Shannon

O'Kelley opine whether Flores would "be fitted to the performance of other

gainful [occupations] based on her training, education, and experience," assuming

that she could (1) exert up to 20 pounds of force occasionally, and/or up to 10

pounds of force frequently, and/or a negligible amount of force constantly to move

objects; (2) frequently reach; (3) occasionally stoop, kneel or crouch; and (4) stand

or walk as required of a primarily seated occupation.  (ECF No. 9-5, PageID.3981,

AR at 2698).  The vocational consultant was also asked to assume Flores could not

frequently stand and/or walk and would need to be able to make body adjustments

when seated for comfort.  *Id.*  On March 27, 2019, the vocational consultant

concluded:

> The insured would be fitted to the performance of other
> gainful occupation(s) with the restrictions and limitations
> presented. Vocational options would include, but are not
> limited to, the following:
> Telemarketer ...
> Call Center Representative ...
> Receptionist ...
> Telephone Operator ...

(ECF No. 9-5, PageID.3982, AR at 2699).  Those occupations are available in the

Ann Arbor, Michigan area have median first year hourly rates of $13.93, $12.33,

$14.14, and $14.07 respectively. *Id*. The March 27, 2019 vocational report further

explained:

> The aforementioned occupations would not require
> exertion beyond 10 pounds. These occupations would not
> require stooping, kneeling, or crouching. Standing and
> walking would be required briefly and work is performed
> mostly seated. These occupations are performed in work
> setting where one would have the ability to alter, shift or
> change positions for brief periods without interfering
> with the functions of the occupations. These occupations
> would exist within the insured's labor market and
> provide an hourly income that would meet or exceed
> $9.13 per hour where the current minimum wage of
> Michigan is $9.25 as of 1/1/18.  The insured has
> experience in dealing with people, providing external and
> internal customer service, maintaining/sharing
> information, use of general office tools, providing
> clerical support, answering phones, and operating a
> computer to enter/retrieve data which are sufficient to
> perform the aforementioned occupations. These
> occupations do not require more education then
> demonstrated by the insured. The insured is fitted by
> training, education and experience to the performance of
> the other gainful occupations with the restrictions and
> limitations presented.

(ECF No. 9-5, PageID.3982-83, AR at 2699-2700).

On April 12, 2019 Unum informed Flores' counsel that it was upholding the

termination of LTD benefits because she was able to engage in a gainful

occupation after having received at least 24 months of LTD benefits and was

therefore not entitled to LTD benefits after the 24-month period.  (ECF No. 9-5,

PageID.3988-3997, AR at 2705-14).

## III.   DISCUSSION

### A.   Disputed Standard of Review

The parties disagree on the applicable standard of review.  Flores maintains

that it is *de novo*, while Unum insists the standard is arbitrary and capricious.

Typically, in a case involving benefits under an ERISA plan and where the plan

administrator has discretionary authority to determine eligibility for benefits, the

Court is to review the administrative record under the "arbitrary and capricious"

standard of review, and to affirm the underlying benefits decision if the decision

was "rational in light of the plan's provisions."  *Univ. Hosps. of Cleveland v.*

*Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (citing *Yeager v. Reliance*

*Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).

Here, the Plan document provides:

> When making a benefit determination under the policy,
> Unum has discretionary authority to determine your
> eligibility for benefits and to interpret the terms and
> provisions of the policy.

(ECF No. 10-2, PageID.4060; *see also* ECF No. 10-2, PageID.4099-5000 ("The

Plan ... delegates to Unum and its affiliate Unum Group discretionary authority to

make benefit determinations under the Plan.")).  Unum maintains that Michigan's

"anti-discretionary clause" regulation, Mich. Admin. Code R. 500.2202, which

generally makes discretionary clauses unenforceable, does not apply in this case

because the Plan was not issued or delivered in Michigan.  Rule 500.2202 provides

in relevant part:

> (c) On or after [July 1, 2007] a discretionary clause
> issued or delivered to any person in this state in a policy
> contract, rider, endorsement, certificate or similar
> contract document is void and of no effect. This does not
> apply to contract documents in use before that date, but
> does apply to any such document revised in any respect
> on or after that date.

Unum issued the Plan to the Policyholder, Flores' employer Promedica

Health Systems, Inc., on January 1, 2006.  (ECF No. 10-2, PageID.4044).  The

Plan was issued to Promedica at 2142 North Cove Blvd., Toledo, Ohio.  (ECF No.

10-2, PageID.4094).  The Plan also provides that the "governing jurisdiction" is

Ohio.  (ECF No. 10-2, PageID.4044).  The Plan expressly states that it was

delivered in the State of Ohio:

> The policy is delivered in and is governed by the laws of
> the governing jurisdiction [i.e., Ohio] and to the extent
> applicable by the Employee Retirement Income Security
> Act of 1974 (ERISA) and any amendments.

(ECF No. 10-2, PageID.4044).  Unum points to case law holding that group

policies delivered or issued outside the state of Michigan are not subject to Rule

500.2202.  *See Mellian v. Hartford Life and Accident Ins. Co.*, 161 F.Supp.3d 545

(E.D. Mich. 2016); *Tikkanen v. Liberty Life Assurance Co.*, 31 F.Supp.3d 913,

920–22 (E.D. Mich. 2014); *Rice v. Sun Life & Health Insurance Co.*, 2014 WL

24046 (W.D. Mich. Jan. 2, 2014); *Breland v. Liberty Life Assur. Co of Boston*, 2015 WL 1132948 (E.D. Mich. Mar. 12, 2015).

Flores argues that in a letter dated May 17, 2007, Unum informed Michigan's Commissioner of Insurance it would no longer be enforcing discretionary authority language in the policies listed in the letter. (ECF No. 16-2). Flores also contends that the policy at issue in this case is listed as one where discretionary authority will no longer be enforced. (ECF No. 16-3, PageID.4470). Flores urges the court to reject Unum's argument that the governing jurisdiction listed in the plan is Ohio because this is a case involving a Michigan resident employed at a facility located within Michigan. Unum disputes the effect of this letter, asserting that it merely complied with Rule 500.2202(e)'s requirement to provide a list to the commissioner of all forms in effect in Michigan that contain discretionary clauses. Unum says that versions of that policy were delivered in Michigan, and thus, the discretionary language does not apply to those policies based the administrative rule. Here, however, Unum maintains that because the policy was delivered in Ohio, it does fall within the scope of the administrative rule.

Plainly, Rule 500.2202, according to its own express terms, does not apply here. By its very terms, Rule 500.2202(c) applies only to a "policy, contract, rider, indorsement, certificate, or similar [insurance] contract document" that is "issued

or delivered to" a person in Michigan. *Mellian v. Hartford Life and Accident Ins. Co.*, 161 F.Supp.3d 545, 556 (E.D. Mich. 2016) (quoting Mich. Admin. Code R. 500.2202(c)). As Unum correctly points out, the policy at issue here was issued and delivered in the state of Ohio. Accordingly, the Michigan administrative rule does not override the express grant of discretionary authority in the policy. *See e.g.*, *Tikkanen v. Liberty Life Assurance Co.*, 31 F.Supp.3d 913, 920-22 (E. D. Mich. 2014) (finding no basis to apply Rule 500.2202(c) to void a discretionary clause in a long term disability insurance policy, where the policy was issued in Georgia and there was no evidence that any relevant insurance document was delivered to anyone in Michigan); *Rice v. Sun Life & Health Insurance Co.*, 2014 WL 24046, at *5 (W.D. Mich. Jan. 2, 2014) (likewise declining to apply the state insurance rule because the long term disability policy in that case "state[d] that it was issued in Rhode Island and [wa]s governed by the laws of that state").

Moreover, the choice of law provision in the policy precludes application of Rule 500.2022. As mentioned above, the policy provides that the "governing jurisdiction" is Ohio. (ECF No. 10-2, PageID.4044). Courts in this district generally agree that such a choice of law provision precludes application of Rule 500.2022. *See Rice v. Sun Life & Health Ins. Co.*, 2014 WL 24046, at *5 (W.D. Mich. Jan. 2, 2014) *Williams v. Target Corp.*, 2013 WL 5372877, at *2 (E.D. Mich. Sept. 25, 2013) (concluding that the "Michigan anti-discretionary clause

regulation does not bar the grant of discretionary authority in the 2010 Policy, because that Policy was not issued or delivered in Michigan"); *Foorman v. Liberty Life Assurance Co. of Boston*, 2013 WL 1874738, at *3 (W.D. Mich. May 3, 2013) (holding that Michigan's anti-discretionary clause rule did not apply because the group disability insurance policy was not issued or delivered in Michigan and a conflict-of-law analysis compelled application of Pennsylvania law); *Holmes v. Aetna Life Ins. Co.*, 2017 WL 3287633 (E.D. Mich. Aug. 2, 2017). Flores does not offer any authority suggesting that this result is changed by the fact that she, the insured, is a Michigan resident, working for an employer in Michigan.

The court is further not persuaded that the letter Unum sent to the Michigan Insurance Commissioner changes this result. Nothing in the letter suggests that Unum was voluntarily agreeing that policies issued and delivered outside the state of Michigan would be subject to Rule 500.2022, despite such policies being expressly excluded from the rule. Indeed, as Unum argues, the policies listed in the letter, to which the rule would apply, were only those issued "as defined in the referenced rule." Again, the rule expressly excludes policies issued and delivered outside of Michigan. Unum's suggested interpretation of the letter is reasonable and well-supported in the law and Flores does not offer authority suggesting a contrary result is appropriate. Accordingly, the court finds that the arbitrary and capricious standard of review applies to the court's assessment of Flores' claim.

B.    <u>Unum's Decision was Neither Arbitrary Nor Capricious</u>

The arbitrary and capricious standard of review is the "least demanding form of judicial review," under which the court must uphold a denial of benefits if it is "rational in light of the plan's provisions." *Monks v. Keystone Powdered Metal Co.*, 78 F.Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted), aff'd, 10 Fed. Appx. 273 (6th Cir. 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citations omitted). Thus, "[b]efore concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti v. Sun Life Assurance Co.*, 30 F.Supp.2d 1001, 1008 (M.D. Tenn. 1998). Even where "the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Schwalm v. Guardian Life Insurance Co.*, 626 F.3d 299, 308 (6th Cir. 2010).

In the view of the Court, Unum's decision is supported by a well-reasoned explanation. Flores' argument that Unum initially improperly relied on Dr. Lee's

opinions during the first level of review and then improperly relied on Dr. Coughlin's opinions gives short shrift to the thorough review Unum conducted both at the initial and appeal stages.  Perhaps Flores would have a meritorious point if her description were the sum total of Unum's decision-making process, however, both the thorough review decisions, and the underlying medical evidence, fully support Unum's decision.

More specifically, Unum did not rely solely on the opinions identified as faulty by Flores.[2]  Rather, Unum's decision was well-supported by the opinions of her own surgeon, Dr. Patel, who released her to work without restrictions, the SSA's decision, which found that she could perform light work, along with the medical opinions of consulting physicians Drs. Kouros and Coughlin, the IME by Dr. Lee, and the vocational analyses of Shannon O'Kelley and Jennifer Lyon.

---

[2] Moreover, as recognized by Flores, case law "recognizes that it is not necessarily arbitrary or capricious for a plan administrator to prefer the opinion of a non-treating medical professional over that of a claimant's treating physician, even where the former rests upon a review of the medical record rather than direct examination of the claimant." *Mellian*, 161 F.Supp.3d at 562 (citing *Balmert v. Reliance Standard Life Insurance Co.*, 601 F.3d 497, 504 (6th Cir. 2010); *White v. Standard Insurance Co.*, 895 F.Supp.2d 817, 848 (E.D. Mich. 2012); *Harris v. Kemper Insurance Cos.*, 360 F.Supp.2d 844, 849 (E.D. Mich. 2005)). Rather, as a general rule, "when a plan administrator chooses to rely upon the medical opinions of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. Western–Southern Life Insurance Co.*, 347 F.3d 161, 169 (6th Cir. 2003).  Similarly, Flores offers no authority suggesting that Dr. Coughlin was unqualified to conduct a record review merely because he has a special credential in endocrinology.  Further, Flores fails to explain how this makes Dr. Coughlin unqualified or why it would be improper for Unum to rely on his record review as one component of its decision to deny LTD benefits after 24 months.  (*See* ECF No. 19, PageID.4484, n. 2)

Both the FCE testing and the SSA decision concluded that Flores is capable of performing light work, which is supported by Dr. Patel's release of Flores without restrictions.[3]  Dr. Kim's finding that Flores is "totally and permanently disabled" is undermined by foregoing evidence and he fails to address these, or any other contrary evidence or opinions in the record.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Balmert v. Reliance Standard Life Insurance Co.*, 601 F.3d 497, 504 (6th Cir. 2010) (It is well established that a decision-maker need not give special deference or weight to the opinions of a treating physicians when evaluating a claim for disability benefits.).  Nothing in Unum's decisions suggests that it overlooked the opinions and findings of any of Flores' treating providers or her medical records.

While Flores points to some medical evidence and opinions that support her claim, she fails to address or even acknowledge the vast evidence supporting Unum's decision.  This is important because Unum need not show that every piece

---

[3] "[A]n ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Seiser v. UNUM Provident Corp.*, 135 Fed. Appx. 794, 799 (6th Cir. 2005) (quoting *Whitaker v. Hartford Life & Accident Ins. Co.*, 121 Fed. Appx. 86, 87 (6th Cir. 2005); citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-833 (2003) (noting the "critical differences between the Social Security disability program and ERISA benefit plans"); *Wagner-Harding v. Farmland Indus. Inc. Employee Ret. Plan*, 26 Fed. Appx. 811, 816 (10th Cir. 2001) (holding that SSA "proceedings are entirely different and separate from a claim under ERISA, with different parties, different evidentiary standards, and different bodies of law governing their outcomes").  While not bound by the SSA decision, the Court here only points to the decision as one of many examples of persuasive evidence supporting the conclusion that UNUM's decision was rational in light of the plan's provisions.

of evidence in the record supports its decision.  Rather, Unum need only establish that its decision was rational in light of the plan's provisions.  Here, the medical and opinion evidence overwhelmingly shows that Flores is able to perform light work, which means that is she not disabled from "any occupation" within the meaning of the policy.  This is not to suggest that Flores is not limited and does not suffer from chronic pain.  However, the policy requires her to be unable to perform "any occupation" after 24 months of disability.  And, the evidence here clearly shows that she can perform several occupations.

Unum's findings and its denial of LTD benefits after 24 months is rational and well-supported by the medical evidence of record.  Accordingly, its motion for judgment on the administrative record is **GRANTED**.

**IT IS SO ORDERED**.

Date: May 29, 2020                         s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States District Judge